Filed 2/21/25  In re M.D. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.D. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>K.Q.,<br><br>     Defendant and Appellant. | G064338<br><br>(Super. Ct. Nos. 21DP1420, 21DP1421, 21DP1422, 21DP1423, 21DP1424)<br><br>O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Julie Anne Swain, Judge. Conditionally reversed and remanded with directions.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Chloe R. Maksoudian, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minors.

K.Q. (Mother) appeals from the orders terminating parental rights to her children, Al.A., Ay.A., E.A., H.Q., and M.D. (collectively the children), and placing them for adoption. (Welf. & Inst. Code, § 366.26.)[1] Mother contends the orders must be reversed because the Orange County Social Services Agency (the Agency) and the juvenile court failed to comply with their respective duties under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California law.[2] Specifically, Mother contends the Agency failed to inquire of the children's maternal aunt J.Q. about possible Indian ancestry and also failed to so inquire of paternal relatives of H.Q. and M.D.

The Agency concedes it failed in its duty of initial inquiry as required under ICWA and related California law as to H.Q. and M.D.'s paternal relatives. We accept the Agency's concession but also conclude the Agency further failed in its duty of inquiry with respect to the children's maternal aunt J.Q. We therefore conditionally reverse the orders terminating Mother's parental rights as to the children and remand for the limited purpose of ensuring compliance with ICWA and related California law. As explained further in the disposition, *post*, we direct the Agency and the juvenile court to satisfy their duties under ICWA and related California law within certain time periods, given the importance of expediency and need for

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] Because ICWA and section 224.2 use the term "Indian," we will do the same for consistency. We recognize, however, that other terms, such as "Native American" or "indigenous," are preferred by many. (See *In re E.W.* (2023) 91 Cal.App.5th 314, 320, fn. 4.)

finality at this stage.[3] After the Agency has satisfied its duties, if the juvenile court finds ICWA does not apply to any of the proceedings involving the children, then the orders terminating parental rights and placing the children for adoption shall be reinstated.

## FACTUAL AND PROCEDURAL BACKGROUND

The children were taken into protective custody in December 2021 due to allegations of physical abuse, general neglect, and caretaker absence. The Agency filed a child welfare petition on the children's behalf, which was later amended by interlineation (the petition). The petition alleged the children came within the jurisdiction of the juvenile court under section 300, subdivisions (b)(1) (failure to protect), and (g) (no provision for support). The petition identified R.D. as the biological father of H.Q. and M.D., and O.A. as the alleged father of Al.A., Ay.A., and E.A.

Mother and R.D. denied having Indian ancestry during their respective meetings with social workers in November and December 2021. In June 2022, R.D. and O.A. each denied having Indian ancestry. Mother again denied having Indian ancestry in December 2022.

As noted in the jurisdiction and disposition report dated February 1, 2022, "[M]other reported she has two full siblings. Her oldest brother is Jo[.Q.] who lives with the maternal grandmother. Her younger sister J[.Q.] lives in Orange County with her husband and children." The Agency's interim report dated December 12, 2022 indicated earlier that month, the maternal uncle Jo.Q. reported he was "unsure if results from a '23

---

[3] For the same reasons, we encourage the parties to stipulate to the immediate issuance of the remittitur in this case. (See Cal. Rules of Court, rule 8.272(c)(1).)

3

& Me' DNA test would count as [having] indigenous ancestry." He explained about a year earlier, he "completed the DNA test" and "a recent update . . . indicated that he and his family have '75% indigenous American' ancestry but there was no specific area/county region/tribe identified." The maternal uncle further stated that before the DNA test results, "he and his family just identified as 'of Latin American descent.'" The maternal uncle stated "there is no other known information," but if he learned of any updates, he would notify the assigned social worker. In response, the Agency submitted an ICWA unit referral.

That same month, the social worker spoke with the maternal grandparents who each denied any Indian ancestry in the family. Again in January 2023, Mother, R.D., and O.A. each denied having any Indian ancestry. In addition, that same month, the maternal uncle confirmed his "family's indigenous ancestry is from Latin America and not from the United States or Alaska." He stated "he is [the] first generation born in the United States," "the results of the ancestry DNA test he took[] did not specify any Native American ancestry from the United States," and he "believes the percentage of indigenous ancestry shown is from Latin American indigenous heritage."

The Agency never made an inquiry of the maternal aunt J.Q. regarding Indian ancestry. In March 2023, and again at the permanency hearing in May 2024, the juvenile court found ICWA and California's counterpart inapplicable to the children.

Following the permanency hearing, the juvenile court found each of the children adoptable and terminated parental rights as to each of them. Mother appealed.

4

DISCUSSION

I.

ICWA GENERALLY

"In 1978, Congress enacted the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) to 'formalize[] federal policy relating to the placement of Indian children outside the family home.' [Citation.] Under ICWA's state analogue, the California Indian Child Welfare Act (Cal-ICWA; Welf. & Inst. Code, § 224 et seq.), courts and child welfare agencies are charged with 'an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child' in dependency cases. (Welf. & Inst. Code, § 224.2, subd. (a).) Child welfare agencies discharge this state law duty by 'asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.' (§ 224.2, subd. (b).)" (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1124–1125 (*Dezi C.*).)

"ICWA and Cal-ICWA are unique statutory schemes that are intended to protect Native American heritage, cultural connections between tribes and children of Native American ancestry, the best interests of Indian children, and the stability and security of Indian tribes and families. [Citations.] When there is an inadequate inquiry and the record is underdeveloped, it is impossible for reviewing courts to assess prejudice because we simply do not know what additional information will be revealed from an adequate inquiry." (*Dezi C., supra*, 16 Cal.5th at p. 1125.)

"Section 224.2 codifies and expands on ICWA's duty of inquiry to determine whether a child is an Indian child. Agencies and juvenile courts

have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child. [Citation.] This 'duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.' [Citations.]

"Section 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' [Citation.] '[E]xtended family member' means 'a person who has reached the age of eighteen and who is the Indian child's grandparent, *aunt* or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.'" (*Dezi C., supra*, 16 Cal.5th at pp. 1131–1132, italics added.)

## II.

### WE CONDITIONALLY REVERSE THE ORDERS AS TO THE CHILDREN

Mother contends the Agency failed in its duty of inquiry required under ICWA and Cal-ICWA to make inquiries of paternal relatives of H.Q. and M.D., and further failed to make an inquiry of the children's maternal aunt, J.Q. The Agency concedes it did not fulfill its duty of initial inquiry as to H.Q. and M.D. because there were paternal relatives of those two children it could have but did not question about possible Indian ancestry. (See § 224.2, subd. (b) [ICWA inquiry includes asking "extended family members" whether child is or may be an Indian child]; 25 U.S.C. § 1903(2) [extended family members include Indian child's grandparent and first or second

cousin].) The Agency further concedes that in light of *Dezi C., supra*, 16 Cal.5th at page 1125, we must conditionally reverse the orders as to H.Q. and M.D. and remand to the juvenile court to make such inquiries.

We accept the Agency's concession as to H.Q. and M.D. But we conclude the Agency also failed in its initial inquiry with respect to all the children because it could have but did not question the children's maternal aunt J.Q. about Indian ancestry. There is no question a maternal aunt qualifies as an extended family manner under ICWA and Cal-ICWA. The record shows the Agency was aware of the maternal aunt J.Q., she lived locally, and she appeared readily available for inquiry by the Agency.

Because there was an inadequate inquiry and the record is underdeveloped as to all the children, we cannot assess whether the insufficient inquiry was prejudicial because we do not know what additional information might be revealed from an adequate inquiry. (See *Dezi C., supra*, 16 Cal.5th at p. 1125.) We therefore must conditionally reverse the orders as to all the children and remand with directions to the Agency as set forth in our disposition *post* to conduct an adequate inquiry.

DISPOSITION

The juvenile court's orders terminating parental rights as to the children are conditionally reversed. The matter is remanded to the juvenile court with the following directions. Within 30 days of issuance of the remittitur, the Agency must file a report demonstrating its compliance with ICWA and section 224.2. Within 45 days of issuance of the remittitur, the juvenile court must conduct a hearing to determine whether the Agency has complied with ICWA and related California law with respect to each child. After the juvenile court ensures compliance with the applicable inquiry and notice requirements, it shall make a finding as to whether ICWA applies to

7

the proceedings with respect to each child. The juvenile court has the discretion to adjust these time periods on a showing of good cause.

If the juvenile court finds the Agency has satisfied its duties and finds ICWA does not apply to any of the proceedings involving the children, then the juvenile court shall reinstate the orders terminating parental rights and placing the children for adoption. Alternatively, if the juvenile court finds there is reason to know any of the children is an Indian child, the court shall proceed accordingly with respect to that child for compliance with the inquiry and notice requirements of sections 224.2 and 224.3.


MOTOIKE, J.

WE CONCUR:


MOORE, ACTING P. J.


GOETHALS, J.